364 So.2d 1293 (1978)
STATE of Louisiana
v.
Carl I. SYKES.
No. 61403.
Supreme Court of Louisiana.
June 19, 1978.
On Rehearing November 13, 1978.
*1294 Elizabeth W. Cole, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.
Carl I. Sykes and John Tasker were jointly indicted by the grand jury for the Parish of Orleans for the crime of distribution of a controlled dangerous substance, to-wit: heroin, in violation of La.R.S. 40:966. Sykes was separately tried by a jury and found guilty as charged. He was subsequently sentenced to life imprisonment at hard labor,[1] which sentence was to run concurrently *1295 with any and all sentences imposed. On appeal, defendant relies on four assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion for a mistrial based on a question asked to him on crossexamination by the state concerning the details of a prior criminal conviction. He argues that the state's question was inflammatory and caused prejudice to him in the mind of the jury.
During direct examination, defendant admitted he had on a prior occasion pleaded guilty to manslaughter. On cross-examination, the state asked the following question:
Isn't it true that you were charged with murdering one William Johnson?
Prior to defendant's answering, defense counsel's objection to the question was sustained by the trial judge. Outside the presence of the jury, defendant then moved for a mistrial. The trial judge denied the motion and thereafter admonished the jury to disregard the state's reference to the murder charge and to consider only defendant's conviction for manslaughter.
In State v. Jackson, 307 So.2d 604 (La. 1975), this court held that the state, in impeaching the credibility of a defense witness, may not only establish prior convictions of the witness, but may also cross-examine the witness about the details of the prior convictions in order to show the "true nature" of the offenses. The Jackson holding has since been extended to apply to defendants testifying in their own behalf. State v. Dupar, 353 So.2d 272 (La.1977); State v. Elzie, 351 So.2d 1174 (La.1977); State v. Victor, 347 So.2d 205 (La.1977); State v. Jackson, 339 So.2d 730 (La.1976); State v. Williams, 339 So.2d 728 (La.1976); State v. Elam, 312 So.2d 318 (La.1975).
In the instant case, although the trial judge sustained the defense objection to the question asked by the state on cross-examination of defendant, the question was proper since it sought only to put the true nature of defendant's prior conviction for manslaughter before the jurors so that they might assess defendant's credibility in light of his past criminal conduct. Furthermore, we do not find that the state's question was inflammatory. Moreover, the trial judge sustained defendant's objection to the question before it was answered and admonished the jury to disregard the question. Also, no further evidence was adduced as to the details of defendant's prior manslaughter conviction. Hence, the trial judge did not err in denying defendant's motion for a mistrial.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his motion for a new trial in which he alleged, inter alia, that the provision for mandatory life imprisonment at hard labor for distribution of heroin prescribed by La.R.S. 40:966 inflicts cruel, excessive and unusual punishment in violation of the federal and state constitutions.
This contention has been addressed in several decisions of this court. State v. Hopkins, 351 So.2d 474 (La.1977); State v. Whitehurst, 319 So.2d 907 (La.1975); State v. Stetson, 317 So.2d 172 (La.1975). In Whitehurst, we held that mandatory life imprisonment, subject to probation and parole opportunities, but imposed without judicial consideration of any attendant mitigating circumstances, is neither excessive, nor cruel and unusual. Hence, the trial judge did not err in denying defendant's motion for a new trial grounded on this claim.
Defendant further argues that, under the circumstances of this case, the imposition of mandatory life imprisonment at hard labor subjects him to excessive punishment in violation of La.Const. art. I, § 20.
La.Const. art. I, § 20 provides in pertinent part:
No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. . . . (Emphasis added.) *1296 Some members of this court, including the author of this opinion, are of the view that this constitutional provision only gives to this court the judicial power to declare as unconstitutional laws which provide for excessive sentences rather than extending the judicial power to appellate review of sentences imposed in individual cases. Other members of the court interpret the provision as conferring upon this court constitutional authority to review sentences imposed in individual cases. However, we need not resolve this issue in the present case for, under either interpretation of the constitutional provision, the sentence imposed here is not excessive in view of the fact that, by his own admission, defendant knowingly and intentionally distributed to an undercover narcotics agent three bundles of heroin totaling seventy-five individual dosage units of the controlled dangerous substance. Defendant also admitted to having been convicted of criminal trespass (twice), interstate shipment of stolen goods, and manslaughter.
It should also be observed that, if a majority of this court ultimately was to conclude that we have constitutional authority to review sentences imposed in individual cases and was to find the sentence excessive in a case like this where the penalty provision is mandatory (life imprisonment), we would be faced with the additional issue as to the sentence to be imposed.[2]
Assignment of Error No. 2 is without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant contends the trial judge erred in denying his supplemental motion for a new trial in which he alleged that the state's dismissal of the indictment against his co-defendant, John Tasker, because of a defect in the state's case against him, constituted an admission by the state that the case against defendant was likewise defective, since the evidence against the two co-defendants was the same. He argues that any defect in the state's case against him constituted evidence favorable to the accused which the state was obligated to furnish to the defense. He further assigns as error the rulings of the trial judge at the hearing of this matter in which the judge sustained the state's objections on the ground of relevancy to defense questioning of witnesses relative to the dismissal of the indictment against his co-defendant, Tasker.
Defendant and Tasker were jointly indicted for the crime of distribution of a controlled dangerous substance, to-wit: heroin. Prior to trial, defendant filed a motion for severance grounded on a claim of antagonistic defenses. The motion was granted by the trial judge. Subsequently, defendant was separately tried by jury and found guilty as charged. Sentence was imposed by the court. Approximately six weeks after defendant's conviction and three weeks after sentencing, the state dismissed the indictment against Tasker. About two weeks later, based on a newspaper article in which District Attorney Harry Connick reportedly stated that the charge against Tasker had been dismissed because the case against him "was defective," defendant filed a supplemental motion for a new trial claiming that the state's case against him was likewise defective since the evidence against him was the same as that against his co-defendant. Therefore, he asserted that the granting of a new trial was warranted.
At the new trial hearing, among those witnesses called by the defense in support of the motion was District Attorney Connick who testified that he knew of no defect in the state's case against defendant. He further stated he had discussed the case with his assistants and had been informed that the state had no evidence in its possession favorable to the accused. The state reiterated throughout the new trial hearing that it did not possess any evidence favorable *1297 to defendant. During defendant's examination of the witnesses called to testify at the hearing, the state repeatedly objected on the ground of relevancy to defense questioning pertaining to the state's dismissal of the charge against Tasker. The objections were sustained by the trial judge. Subsequently, defendant applied to this court for supervisory writs alleging error in the rulings of the trial judge in sustaining the state's objections to defense questioning of witnesses regarding the nolle prosequi of the case against Tasker. He asserted that the trial judge's rulings prevented him from establishing that the state had in its possession evidence exculpatory to the defense which it had failed to disclose. Finding no error in the rulings complained of, this court denied defendant's application for supervisory writs. State v. Sykes, 331 So.2d 492 (La.1976).
Pursuant to La.Const. art. 5, § 26(B), except as otherwise provided by the state constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district. See La.Code Crim.P. art. 61; La. R.S. 16:1. La.Code Crim.P. art. 691 specifically provides:

The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court. The dismissal may be made orally by the district attorney in open court, or by a written statement of the dismissal signed by the district attorney and filed with the clerk of court. The clerk of court shall cause the dismissal to be entered on the minutes of the court. (Emphasis added.)
The entering of a nolle prosequi rests entirely within the discretion of the prosecuting attorney. State v. Franton, 319 So.2d 405 (La.1975); City of Lake Charles v. Anderson, 248 La. 787, 182 So.2d 70 (1966); State v. Broussard, 217 La. 90, 46 So.2d 48 (1950). Hence, the state possessed absolute discretion to dismiss the indictment with respect to Tasker.
It is well settled that the prosecution may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or punishment. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Cass, 356 So.2d 936 (La.1977); State v. Williams, 349 So.2d 286 (La.1977); State v. Robinson, 342 So.2d 183 (La.1977). In the instant case, the state affirmatively stated that it did not possess any evidence favorable to defendant. Furthermore, the district attorney testified that the state's case against defendant was not defective. Hence, we reject defendant's contention that the state possessed evidence favorable to the defense, particularly evidence indicating that the case against him was defective. Accordingly, the trial judge did not err in denying defendant's supplemental motion for a new trial grounded on this contention.
Assignments of Error Nos. 3 and 4 are without merit.
The record discloses that defendant was sentenced on the same day that his motion for a new trial was filed. The record does not reflect when this motion was denied. La.Code Crim.P. art. 873 provides that, if a motion for a new trial is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled absent an express waiver of the delay by defendant. The record reflects no waiver of the delay. Thus, defendant's sentence was illegally imposed. Even though defendant did not object to this error at the time of sentencing or urge it on appeal, the error shall be considered by this court since it is an error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. La. Code Crim.P. art. 920(2); State v. Hutto, 349 So.2d 318 (La.1977); State v. Young, 337 So.2d 1196 (La.1976); State v. Quinn, 288 So.2d 605 (La.1974). Hence, the sentence must be vacated and the case remanded to the trial court with instructions that defendant be sentenced in accordance with law.

*1298 DECREE
For the reasons assigned, the conviction is affirmed, but the sentence imposed is vacated and set aside, and the case is remanded to the Criminal District Court for the Parish of Orleans, with instructions to the trial judge to sentence defendant in accordance with law.
TATE, J., dissents and assigns reasons.
DIXON, J., concurs.
CALOGERO, J., concurs.
DENNIS, J., dissents for the reasons assigned by him in State v. Terrebonne, La., 354 So.2d 1356 and also disagrees with this court's refusal to reconsider and overrule State v. Jackson, La., 307 So.2d 604 (1975), regarding to cross-examination of the defendant on details of prior convictions.
TATE, Justice, dissenting.
I am prompted to dissent by the extreme injustice of the life sentence imposed upon this addictespecially since the charge for the identical transaction was nol prossed against the large-scale dealer (for whom the life imprisonment was presumably designed) who had used the defendant as an impromptu messenger, who received in return a small amount of heroin needed by this addict for his day's use.
The circumstances of this transaction are as follows:
Taplin, an undercover police officer, arranged to buy 75 bags of heroin for $525 from John Tasker, a wholesale dealer. When Taplin appeared at the scene of the transaction, Tasker sent the defendant Sykes to him.
Upon Taplin's demurrer that his deal was not with Sykes, Tasker came over and got the money from Taplin. Then, Tasker and Sykes went upstairs, and Sykes returned with the three bundles (75 bags) of heroin and delivered it to the undercover agent.
Tasker was called as a witness at the defendant's trial and refused to testify as to the transaction, exercising his constitutional privilege.
Sykes testified in his own defense. He admitted to a criminal record (three misdemeanors, one manslaughter plea, and one federal charge of interstate transportation) in 1961-64, but stated he had been out of prison since 1965 (some ten years prior to the present offense).
He fully admitted his participation in the transaction. He stated he had been an addict for nine years and that, earlier on the day of the transaction, he had made a deal with Tasker to trade his black leather jacket for some heroin for his habit.
Just then, the undercover agent (Taplin) drove up, and Tasker told Sykes that, if he delivered the three bundles to Taplin, Tasker (the dealer) would give the defendant Sykes five bags of heroin (about a day's or half a day's supply for his habit).
Sykes received no money for his messenger work, nor did he participate in the exchange of money by which Taplin paid Tasker. He had never before worked for or bought heroin from Tasker, and Tasker had solicited him to make the delivery. He was, nevertheless, technically guilty of the offense as broadly defined by the statute.
The jury convicted (10-2) the defendant of distribution of heroin. The defendant was sentenced to life imprisonment (with benefit of probation, suspension or parole), the mandatory sentence then required upon conviction. La.R.S. 40:966 B(1) (1973).[1]
No objection was made at the time of sentencing. However, by motion for a new trial, the defendant asserted that the life imprisonment provided by the statute was in violation of the federal constitution's Eighth Amendment and of the prohibition of La.Const. of 1974, Art. 1, Section 20, against cruel, excessive, or unusual punishment.
*1299 At the motion for a new trial, the defendant proved that the prosecutor had nol prossed the indictment against Tasker (the wholesale dealer, who had impromptu solicited Sykes to act as his messenger in his transaction with the undercover agent). The prosecutor refused to disclose his basis for this action, despite the defendant Sykes' strong argument that the dismissal must have been on the basis of Brady type information which had been withheld from Sykes (despite his Brady motion).
We have held that, where the individual application of the law is the basis for a claim of excessive sentence under the circumstances, there must be an objection at the time of sentencing to preserve the issue for appellate review (and to afford the trial judge an opportunity to disclose the factual basis for his overruling of the objection). State v. Williams, 340 So.2d 1382 (La.1976). (Here, the excessiveness was not asserted until a few hours later on the same day, by the motion for a new trial.) However, we have not required the objection in order for us to pass upon the alleged facial unconstitutionality of a sentence imposed by statute. State v. Whitehurst, 319 So.2d 907 (La.1975).
In Whitehurst, we held that the present enactment and its mandatory life sentence did not impose an excessive sentence for the offense (prior to its 1977 amendment), taking into consideration the probation and parole opportunities which might permit individualized consideration where appropriate to take mitigating circumstances into consideration.
For the reasons stated in my concurring opinion in State v. Terrebonne, 354 So.2d 1356, 1357 (La.1978), I am now of the opinion that we should reconsider our holding in Whitehurst. The present case is an instance of the arbitrary and irrational application of the life penalty to an addict who performed a minor role in a distribution (for the only time in his life), and who was recruited by a wholesaler aware of the addict's desperate need for his daily usagewhereas the wholesaler himself, although charged and apparently without contradiction guilty of the major role in the transaction, is (for whatever reason) scotfree of any penalty because the charges against him has been nol prossed.
I therefore respectfully dissent.

On Rehearing
PER CURIAM.
Upon the defendant's application, a rehearing was granted to reconsider our rejection in our original opinion of the contention that the life sentence here imposed was unconstitutionally excessive. We granted rehearing because we felt that the issues thus presented might also be under review in proceedings argued before us while the application was pending. See State v. Terrebonne, 364 So.2d 1290 (this date decided) and State v. Mallery, 364 So.2d 1283 (this date decided).
Upon our reconsideration, we again find no merit in the contentions of excessiveness, for the reasons assigned by us in the original hearing, as well as in the Terrebonne and Mallery cases this date decided.
Accordingly, our original decree is reinstated.
TATE, J., dissents and assigns reasons.
CALOGERO, J., concurs for reasons assigned in State v. Terrebonne, 364 So.2d 1290, decided this date.
DENNIS, J., dissents for the reasons assigned by TATE, J.,
TATE, Justice, dissenting.
I respectfully dissent from the reinstatement of the life sentence, for the reasons assigned by me in this case on original hearing, in my concurring opinion in State v. Terrebonne, 354 So.2d 1356, 1356 (La. 1978), and in my dissenting opinion in State ex rel. Mallery v. Blackburn, 364 So.2d 1283, 1285 (this date rendered).
NOTES
[1] The crime charged herein is alleged to have occurred on May 19, 1975. Defendant was sentenced on December 12, 1975. La.R.S. 40:966 B(1) then provided for a mandatory sentence of life imprisonment at hard labor. The penalty provision contained in La.R.S. 40:966 B(1) subsequently was amended by La. Acts No. 631, § 1, effective September 9, 1977, to provide for a mandatory sentence of life imprisonment at hard labor without benefit of probation or suspension of sentence. The new penalty provision is not applicable to the instant prosecution.
[2] We recently granted a writ of habeas corpus to review these issues. State v. Terrebonne, 359 So.2d 199 (La.1978). In view of our finding that the sentence imposed in the instant case is not excessive, we need not resolve these issues in this case.
[1] Act 631 of 1977 made the mandatory life sentence imposed to be without benefit of probation or suspension of sentence.