692 So.2d 1045 (1997)
STATE of Louisiana
v.
Robert J. SAIZAN.
No. 96-KA-1340.
Supreme Court of Louisiana.
April 8, 1997.
*1046 Leon Dupree Jackson, Baton Rouge, for applicant.
Richard Phillip Ieyoub, Attorney General, Douglas P. Moreau, District Attorney, Veronica Rhenae Jones, Carl James Jackson, Baton Rouge, for respondent.
KNOLL, Justice.[1]
This is a direct appeal from a judgment of the district court which ruled that the portion of § 11.01 of the Plan of Government of the City-Parish of Baton Rouge (City/Parish), depriving the parish attorney authority to nolle prosequi, was unconstitutional as a usurpation of the State's police power and violative of La. Const. Art. VI, § 9(B).[2] We reverse the district court's declaration of unconstitutionality.

FACTS AND PROCEDURAL HISTORY
On February 3, 1995, the Baton Rouge City Police arrested Robert J. Saizan for operating a vehicle while intoxicated and careless driving, violations of Baton Rouge City Ordinances Title 11 §§ 140 and 143, respectively, and trial was set in City Court for April 26, 1995. On the date of trial, Saizan appeared with appointed counsel. When the case was called for trial, the parish attorney, realizing that he had excused his only witness, a police officer, moved to dismiss the charges against Saizan without prejudice and indicated that he would re-file; counsel for Saizan objected to the dismissal. The City Court judge denied the motion. The parish attorney announced that it would seek writs on the judge's ruling. Pursuant to the City/Parish's request, the City Court judge set a return date and ordered the parties to return to court in 60 days for a status hearing.
The City/Parish never perfected its writ application. Instead, the parish attorney dismissed the original affidavit and re-filed *1047 charges against Saizan on July 5, 1995. At that time, Saizan was informed that his trial would take place on August 7, 1995. In response to the City/Parish's action, Saizan filed a motion to quash, arguing that the City/Parish's failure to perfect its writ application resulted in a final judgment which dismissed the charges against him.
A hearing on Saizan's motion to quash was held on August 7, 1995. During the hearing, the City Court judge questioned the parish attorney's authority to dismiss, citing § 11 of the Plan of Government for the Parish of East Baton Rouge and the city of Baton Rouge. § 11.01 provides:
There shall be a Parish Attorney who shall be appointed by the Metropolitan Council for an indefinite term. He shall be an attorney-at-law and shall have actively practiced his profession in the state for at least five years immediately preceding his appointment. He shall appoint such Assistant Parish Attorneys as may be authorized, at least one of whom shall, at all time, be assigned to the prosecution of ordinance violations, as hereinafter provided. He shall be the legal advisor of the Council, the Mayor-President, and all departments, offices and agencies appointed by or under the jurisdiction of any of the above and shall furnish them on request a written opinion on any question of law involving their official powers and duties. At the request of the Mayor-President or any member of the Council he shall prepare ordinances and resolutions for introduction. He shall draw or approve all bonds, deeds, leases, contracts, or other instruments to which the Parish, the City or any District of which the Council is the governing body is a party or in which any of them has an interest. He shall represent the Parish, the City and any district of which the Council is the governing body in all civil litigation. He shall, in person or through an Assistant Parish Attorney assigned to such duty, represent the City in the prosecution of all ordinance violations in the City Court, except that he shall have no authority to nolle prosequi. He shall further represent both the Parish and City in any criminal case in which the constitutionality or validity of any ordinance or resolution of the Council is in issue. He shall appoint and remove all employees of his office, subject, except in case of Assistant Attorneys, to the provisions of Chapter 9 of this Plan of Government. The compensation of the Parish Attorney and all employees in his office shall be provided by appropriations made by the Council, except that the cost of any Assistant Parish Attorney and other employees assigned to prosecute ordinance violations shall be included in the City Budget. Nothing herein shall be taken to prevent the employment of special counsel when authorized by the Council in any matter relating to its jurisdiction.
(Emphasis added.)
Although the trial transcript ends abruptly after the parish attorney and defense counsel argued their positions, it is apparent that the City Court granted Saizan's motion to quash. On August 29, 1995, the parish attorney filed a notice of intention to apply for a writ of review. On November 2, 1995,[3] the parish attorney filed an application for remedial writs and/or direct appeal in the 19th Judicial District Court.[4] In the district court, the parish attorney's memorandum in support of its application for remedial writs complained that the City Court "questioned [the parish attorney's] authority to `nolle prosequi' or dismiss," and that "[i]t appeared that the East Baton Rouge City Parish Plan of Government [conflicts] with the Louisiana Constitution *1048 and the Louisiana Code of Criminal Procedure."
At the hearing in the district court on March 22, 1996, the trial judge limited argument to the constitutional issue of whether the nolle prosequi provision of § 11.01 restricts the power of the East Baton Rouge Parish District Attorney. After hearing oral argument and taking the matter under advisement, the trial judge ruled that the nolle prosequi provision of § 11.01 of the Plan of Government was unconstitutional.
In essence, the trial judge recognized that although pre-1974 home rule charter governments such as Baton Rouge are not puppets of the legislature, even these governmental entities are required to exercise their authority in conformity with the constitution and in a manner which does not infringe upon the state's police power. On this basis, the trial judge held that denying the parish attorney the right to nolle prosequi was inconsistent with the constitution and provisions of the Louisiana Criminal Code and that it disrupted the efforts to provide uniformity of procedural rules in criminal prosecutions. After considering several hypothetical scenarios, the trial judge held that the nolle prosequi prohibition of § 11.01 must yield to the preemptive police power of the State. Consequently, the trial judge severed the nolle prosequi portion of § 11.01, reversed the City Court's ruling on Saizan's motion to quash, and remanded the case for further proceedings.
Saizan then perfected this direct appeal to us.[5] In compliance with La.R.S. 13:4448,[6] this court notified the attorney general by certified mail of the filing of this case and of the constitutional issue involved. The attorney general did not file briefs or appear at oral argument to represent the interests of the state in this matter. See La.R.S. 49:257(B).[7]

THE BATON ROUGE HOME RULE CHARTER
The governing authority for Baton Rouge derives from a home rule charter enacted under Article XIV, § 3 of the 1921 Louisiana Constitution. Later, Article VI, § 4 of the 1974 Louisiana Constitution continued pre-existing home rule charters. Specifically, La. Const. art. VI, § 4 provides:
Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan *1049 of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
Commenting on this article, we stated in City of Baton Rouge v. Ross, 94-0695 (La.4/28/95); 654 So.2d 1311:
In City of New Orleans [v. Board of Com'rs, 93-0690 (La.7/5/94); 640 So.2d 237], we concluded that Article VI, § 4 of the Louisiana Constitution of 1974 provided not only that those Home Rule Charter governments [like the City-Parish government of Baton Rouge] existing prior to our 1974 constitution retained the power they had exercised under the 1921 constitution, but also that they retained this power absent the limitation that legislative supremacy had previously presented. We thus made it clear that when confronting such home rule entities the legislature no longer possesses, as it did under the 1921 Constitution, "the unqualified power to withdraw, preempt, or overrule a local law that is consistent with the constitution and was enacted pursuant to a constitutionally maintained preexisting home rule charter." City of New Orleans, supra, 640 So.2d at 251. Contrast City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237, 242 (La.1949).
However, we also recognized that Article VI, § 9(B), which provides that "the police power of the state shall never be abridged," demands that the ascendancy of pre-1974 Home Rule Charter government not be absolute. See also Hildebrand v. City of New Orleans, 549 So.2d 1218, 1225 (La.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990) ("[Art. VI, § 9] does not purport to strip the subdivision entirely of its police power, but simply sets forth specific limitations in certain areas"). We then articulated the test by which the balance between these two competing constitutional interests should be resolved: "a litigant claiming that a home rule municipality's local law abridges the police power of the state must show that the local law conflicts with an act of the state legislature that is necessary to protect the vital interest of the state as a whole." City of New Orleans, supra, 640 So.2d at 252 (citations omitted).
City of Baton Rouge, 654 So.2d at 1318-19. (Footnote omitted).
As shown from the constitutional source provisions and prior jurisprudence, it is indisputable that Baton Rouge had the authority to establish a City Court, to organize an office of parish attorney as part of its municipal government, and to delineate the duties and responsibilities of the office of parish attorney. The question then that we are faced with is whether that provision of § 11.01 which denies the parish attorney the authority to nolle prosequi violates the Louisiana constitution and whether such a structure abridges the police power of the State.
The City/Parish argues that there is a similarity of functions between municipal prosecutors and district attorneys. It points out that pursuant to La. Const. art. V, § 26(B) a district attorney has charge of every criminal prosecution by the State in his district. Based upon La.Code Crim.P. arts. 7[8] and 15[9], the City/Parish contends that the term "district attorney" encompasses municipal prosecuting officers. Thus, it asserts that since the prosecuting attorney has charge of every prosecution within his jurisdiction and pursuant to La.Code Crim.P. art. 61 "determines whom, when, and how he shall prosecute," that the nolle prosequi provision of § 11.01 violates La. Const. art. V, § 26(B). We disagree.
*1050 District attorneys derive their authority from the Louisiana Constitution, specifically, Article V, § 26(B) which provides, in part, that the district attorney "shall have charge of every criminal prosecution by the state in his district." Municipal prosecutors, on the other hand, represent specific localities and are charged with the enforcement of local ordinances. La.R.S. 13:1870, et seq. Unlike district attorneys, however, municipal prosecutors are limited to the prosecution of misdemeanors, thereby precluding jury trials, La.R.S. 13:1894, and the prosecution and defense may summon no more than six witnesses for either side without leave of court, La.R.S. 13:1895.
The Louisiana Code of Criminal Procedure also recognizes that there are differences between district attorneys and municipal prosecutors and that different rules might apply to each. La.Code Crim.P. art. 7 provides that "[u]nless the context clearly indicates the contrary, the term "district attorney" includes a municipal prosecuting officer...." (Emphasis added). Similarly, La.Code Crim.P. art. 15 states that the Code of Criminal Procedure governs criminal prosecutions in city and parish courts, "except insofar as a particular provision is incompatible with the general nature and organization of, or special procedures established or authorized by law for, those courts." (Emphasis added). Thus, it is apparent that it is contemplated in the Code of Criminal Procedure that there may be instances where local governing authorities will establish particular enactments which would differentiate municipal prosecuting officers from district attorneys.
The parish attorney asserts that we decided in City of Lake Charles v. Anderson, Judge, 248 La. 787, 182 So.2d 70 (1966), that city prosecutors, like district attorneys, have discretion to nolle prosequi without leave of court. Although we agree with the parish attorney that we so held, such a statement is not complete. In addition to holding that city prosecutors have discretion to nolle prosequi, we further noted that such a right might be curtailed by a statutory law to the contrary. Id. 182 So.2d at 71.
In the case sub judice, it is clear that the framers of the Baton Rouge home rule charter deliberately chose to limit the range of prosecutorial functions that its prosecutors were granted so that they did not have the discretion to nolle prosequi granted district attorneys. The district court found that § 11.01 provision, denying parish attorneys authority to nolle prosequi, interfered with the district attorney's prerogative to determine under La.Code Crim.P. art. 61 who, when and how to prosecute. The district court concluded that the inability of a parish attorney to nolle prosequi could seriously compromise the district attorney's prosecution of felons. As an example, the district court cited an instance where criminal charges were begun in City Court which could not be dismissed under a nolle prosequi, thus prohibiting the district attorney from initiating felony proceedings in district court on the same set of facts. Based upon such a scenario, the district court concluded that the criminal justice system would be hampered and a vital State interest would be adversely affected.
Fundamental to the district court's holding is the unsupported premise that a district attorney may not begin a felony prosecution once a municipal proceeding involving the same set of facts begins. In State v. Norwood, 351 So.2d 122 (La.1977),[10] we were presented with a situation where the defendant was charged with theft in Municipal Court for the City of New Orleans and a violation of La.R.S. 14:67 in Criminal District Court for the Parish of Orleans. The State theft charge and the city theft charge were based upon the same acts. In reversing the district court's granting of the defendant's motion to quash on the ground that the theft *1051 charge had first been brought in Municipal Court, we stated:
We know of no constitutional principle that prevents the filing of appropriate charges against a defendant in several courts of concurrent jurisdiction. If, however, jeopardy attaches in one court, claims of double jeopardy will prevent the defendant form being tried in another court for the same offense.
Id. at 124.
As illustrated in Norwood, the East Baton Rouge Parish District Attorney may proceed with prosecutions for felonies within his district unhindered by the inability of the parish attorney to nolle prosequi cases in City Court. Since there is concurrent jurisdiction in this instance, both the district attorney and the parish attorney may simultaneously proceed with prosecutions in their separate jurisdictions until jeopardy attaches in one of the courts. State v. Norwood, 351 So.2d 122.
Based upon the record before us, we do not find the lack of authority to nolle prosequi repugnant to the Louisiana Constitution and Codal provisions, or an abridgement of the police powers of the State. The district court misconstrued the parish attorney's lack of authority to enter a nolle prosequi as an abridgement of State police power and adversely affecting the district attorney's prosecution of felons. There is no constitutional principle that prevents charges against a defendant in several courts of concurrent jurisdiction. This area of concern exists statewide and is not unique to Baton Rouge City Court. For whatever policy reason the drafters of the Plan of Government for the Parish of East Baton Rouge Home Rule and the city of Baton Rouge denied the parish attorney the authority to nolle prosequi, was a local governing choice which now has constitutional sanctity that we respect. We will not unduly interfere and meddle in its internal affairs.
For the foregoing reasons, the judgment of the district court which declared that nolle prosequi provision of § 11.01 of the Plan of Government unconstitutional is reversed and set aside. This matter is remanded to the City Court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[1] Kimball, J. not on panel. Rule IV, Part 2, § 3.
[2] La. Const. art. VI, § 9(B) provides:

Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
[3] The City Court first set a return date of October 18, 1995. Subsequently, the Parish attorney moved for an extension which was granted until November 1, 1995.
[4] La.R.S. 13:1896(B) governs the review or appeal in criminal cases from city courts. It provides as follows:

Review or appeal of a judgment in any criminal case tried under a state statute in city, parish or municipal courts shall be as provided in Article 912.1 of the Louisiana Code of Criminal Procedure. Review of a judgment in any other criminal case tried in a city, parish or municipal court shall be by appeal to the district court of the parish in which the court of original jurisdiction is located, except in those cases which are appealable to the Supreme Court under the provisions of the Constitution. These appeals shall be on the law alone.
[5] We observe that the constitutional issue was not raised in any pleading in City Court. Instead, it was in brief to the District Court that the City/Parish questioned the constitutionality of Sec. 11.01. Ordinarily, the unconstitutionality of a statute must be presented first to the trial court and must be specially pleaded with particularity. Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94); 646 So.2d 859. Although we questioned whether the constitutional issue was properly raised, it is apparent from the ruling of the City Court that it rested its decision upon Sec. 11.01's proclamation that the Parish Attorney had no authority to nolle prosequi the charges against Saizan. Logic demands that by implication the City Court held that this proviso was constitutional. Having so ruled, the issue was properly raised in the City/Parish's appeal to the District Court where the constitutional issue was fully briefed by both parties, orally argued, and exhaustively considered in a written opinion by the District Court. Under these peculiar facts, we find that the issue of the constitutionality of § 11.01 was properly before the District Court and is also properly before us on direct appeal.
[6] La.R.S. 13:4448 provides as follows:

Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.
[7] La.R.S. 49:257(B) provides:

Notwithstanding any other law to the contrary, the attorney general, at his discretion, shall represent or supervise the representation interests of the state in any action or proceeding in which the constitutionality of a state statute or of a resolution of the Legislature is challenged or assailed.
[8] La.Code Crim.P. art. 7 provides, in pertinent part:

Unless the context clearly indicates the contrary, the term "district attorney" includes a municipal prosecuting officer;....
[9] La.Code Crim.P. art. 15(A) provides:

The provisions of this Code, except as otherwise specially provided by other statutes, shall govern and regulate the procedure in criminal prosecutions and proceedings in district courts. They also shall govern criminal prosecutions in city, parish, juvenile, and family courts, except insofar as a particular provision is incompatible with the general nature and organization of, or special procedures established or authorized by law for, those courts.
[10] In State v. Norwood, 351 So.2d 122 (La.1977), we considered our prior decision in State v. Sawyer, 220 La. 932, 57 So.2d 899 (1952) and rejected its holding that the court which first obtains jurisdiction retains it to the end of the controversy to the exclusion of all others. Subsequently, in City of Baton Rouge v. Ross, 94-0695 (La.4/28/95); 654 So.2d 1311, we cited Sawyer without mentioning Norwood's rejection of its holding. Since Norwood specifically considered Sawyer and rejected it, we find that Norwood best reflects the law which is controlling on this point.